## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | | |
|---|---|---|
| JANICE LOWE Individually, and<br>Derivatively on behalf of Nominal<br>Defendant ANTELOPE TECHNOLOGIES,<br>INC., A Colorado Corporation<br>                        **Plaintiff,**<br><br>v.<br><br>ELTAN, B.V., PIERRE STIRNWEISS,<br>KLAUS GENSLER, MCC COMPUTER<br>COMPANY, LLC, SCALTECH<br>INTERNATIONAL, INC., THOMAS LYKOS,<br>ANNA COLE, IVAN CARDENAS,<br>VICTOR CARDENAS, JR., RODOLFO<br>FABRE, KENNETH GEYER, JOHN GARY<br>NEWTON AND THOMAS SCOTT<br>                        **Defendants**<br><br>    -and-<br><br>ANTELOPE TECHNOLOGIES, INC., a<br>Colorado Corporation<br>                  **Nominal Defendant** | § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO.**<br><br>9:0 5cv38<br><br><br>**JUDGE HEARTFIELD** |

FILED - CLERK<br>U.S. DISTRICT COURT<br><br>2005 FEB 23  PM 2: 36<br><br>TX EASTERN - LUFKIN<br><br>BY_____

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff **JANICE LOWE** ("Plaintiff") Individually and Derivatively on behalf of **ANTELOPE TECHNOLOGIES, INC.,** a Colorado Corporation, and complains of the Defendants ELTAN, B.V., PIERRE STIRNWEISS, KLAUS GENSLAR, MCC COMPUTER COMPANY, LLC, SCALTECH INTERNATIONAL, INC., THOMAS LYKOS, ANNA COLE, IVAN CARDENAS, VICTOR CARDENAS, JR., RODOLFO FABRE, KENNETH GEYER, JOHN GARY NEWTON AND THOMAS SCOTT, and alleges her causes of action as follows:

## PARTIES

Plaintiff Janice Lowe is a resident of Friendswood, Texas.  Plaintiff is, and was at all relevant times, a shareholder of Antelope Technologies, Inc.

Defendant Eltan, B.V. is a Dutch Company organized under the laws of the Netherlands, with its principle place of business at Het Schild 13, 5275 EB Den Dungen, The Netherlands.  Eltan B.V. can be served through its President Gerard Duynisveld, at the above address.

Defendant Pierre Stirnweiss is a Citizen of France residing in Neuchatel, Switzerland.

Defendant Klaus Genslar resides at 26 Farnham Park Drive, Houston, Texas 77024. Mr. Genssler can be served at his residence or at his principle place of business 2727 Allen Parkway, Suite 1700, Houston, TX 77019.

Defendant MCC Computer Company, LLC is a Delaware limited liability company with its principle place of business at 2727 Allen Parkway, Suite 1700, Houston, TX 77019. MCC can be served through its registered agent Klaus Genssler at its principle place of business.

Defendant Scaltech International, Inc. is a Netherlands Antilles company doing business in the United States, with its principle place of business at 720 Oates Road, Houston, Texas 77013.  Scaltech International can be served at this address or by serving its president Klaus Genssler at his residence or principle place of business.

Defendant Thomas J. Lykos resides at 606 Hunters Grove Lane, Houston, Texas 77024 and can be served at this address.

Defendant Anna Cole resides at 2801 Maffitt Court, Fayetteville, North Carolina 28303 and can be served at that address.

Defendant Ivan Cardenas resides at 2202 Enchanted Isle Drive, Houston, Texas 77062 and can be served at that address.

Defendant Victor Cardenas, Jr. resides at 122 Majuro Drive, Galveston, Texas 77554 and can be served at that address.

Defendant Rodolfo Fabre resides at 26 Sunset Blvd., Houston, Texas 77005 and can be served at that address.

Defendant Kenneth Geyer resides at 10557 Tiger Point, Littleton, Colorado 80124 and can be served at that address.

Defendant John Gary Newton resides at 915 Hay St., Fayetteville, North Carolina 28305 and can be served at that address

Defendant Thomas Scott resides at 600 West County Line Road, #21-103, Highlands Ranch, Colorado 80129 and can be served at that address.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction based upon The Lanham Act 15 U.S.C. §1121(a) and 1125(a), The RICO Act 18 U.S.C. §1964, et seq., and pendent jurisdiction of all related claims and parties, see 18 U.S.C. §1965(b).

Venue is proper in this District as several defendants, including Pierre Stirnweiss, Eltan, B.V. and Scaltech International, Inc., are alien defendants. "An alien may be sued in any district." 28 U.S.C. §1391(d). Venue is proper as to each remaining defendants as they combined with, conspired with, aided and abetted every other defendant in producing the harm to Plaintiff which is the subject of this action.

## FACTUAL ALLEGATIONS

Plaintiff is a shareholder of Antelope Technologies, Inc. a high-tech company whose leading product is a modular computer. Modular computing is a revolutionary technology with great potential in the marketplace. The modular computer or "core" developed by Antelope allows a customer to literally transport their entire computer in their shirt pocket. The Antelope core is approximately three inches by five inches and less than an inch thick (3" X 5" X ¾"). Despite its small size, the Antelope core is powerful enough to run a full-scale

operating system such as Windows XP. Because of its small but powerful design, the Antelope core has several distinct advantages. It allows the user to purchase only one copy of expensive software and eliminates redundancy in maintaining and synchronizing multiple computers. No longer will a person need a desktop, a laptop and a personal digital assistant - - a single Antelope modular computer can fill all these needs. The theft of this revolutionary technology is at the heart of this case.

A history of the Antelope core's development is essential to understanding the present dispute. Its foundation is a technology licensed from IBM. Antelope took this foundation technology and upgraded it to the working computer that is now the Antelope core. Antelope also developed specialized computer "shells" into which the core could be plugged to meet the needs of various customers. For example, some customers need a small hand-held device with a touch-screen, while others prefer a desktop application. Antelope developed "shells" to plug the core into for each of the various customer applications.

To perfect the core's technology, Antelope contracted with a Dutch company, Eltan, B.V., a named defendant in this action to upgrade the "bios" or operating code for the core. The underlying technology upon which Eltan based its work was the IBM technology licensed to Antelope. Ultimately, Eltan's efforts were successful and were integrated into the new version of the Antelope core (known as version 1.5). Under the agreement with Eltan, the intellectual property created became the property of Antelope and Eltan expressly disclaimed any patents in the design. The IBM license was never transferred to Eltan, who acted merely as a contractor hired to perform a designated task.

Once the design was perfected, Antelope took steps to bring the product to market. Among these was the selection of a production facility and the hiring of necessary personnel to

physically make the cores and the related application shells.  Also, the need for capital investors was recognized so Antelope began looking for persons willing to invest.

A production facility was set up in Neuchatel, Switzerland under the direction of Ivan Cardenas, a named defendant in this action.  Also retained, as the factory's production manager, was Pierre Stirnweiss, a French citizen and a named defendant in this action. Financing for the Swiss production facility was obtained through a Swiss bank, with half of the loan being underwritten by the Swiss economic development board (a quasi-governmental entity).

Recognizing the need for additional working capital, the Antelope board of directors began to seek out investors.  One such investor was Klaus Genssler, a Houston businessman and named defendant in this action.  Beginning in June of 2004, Alan Taylor (then CEO of Antelope) and other Antelope board members began discussions with Genssler.  He was provided access to highly confidential business information regarding the Antelope core, its market potential, and the Swiss production facility.  To protect this information, Genssler was required to sign a "Mutual Nondisclosure & Non-Compete Agreement," which he executed as President of Scaltech International, Inc. on July 4, 2004.

Genssler immediately recognized the huge potential of this revolutionary product and, rather than simply investing in the company, began steps, in combination with other named defendants, to seize the technology for himself.  Genssler agreed to a $250,000 loan to Antelope, to meet short-term obligations, but insisted that Antelope transfer to his office 75 of the completed cores to serve as collateral for the loan.  This transfer occurred around July 23, 2004.

Genssler also took steps to gain control of Antelope for himself. At a meeting on August 4, 2004, he discussed with Alan Taylor and others a plan whereby the company could file bankruptcy and shed itself of many small investors, thereby increasing the ownership percentage for himself and others who would participate in the scheme. Alan Taylor rejected this idea and later reported it to the Antelope board of directors, along with a recommendation that Antelope stop dealing with Genssler due to his unethical conduct. As an alternative source of capital, Taylor and a select committee of board members began discussions with another high-tech firm, Xybernaut.

After a brief negotiation, Xybernaut and the Antelope committee drafted an investment proposal to present to the respective boards of each company for approval. Once Genssler found out about the competing investor, he immediately retained legal counsel and filed a temporary restraining order in state district court in Texas, preventing the Antelope board from consummating the Xybernaut deal. Genssler never funded the bond required by the Texas court, proving that this was merely a tactic to scuttle the competitor's bid. In the mean time, Genssler purchased enough stock and proxy votes of Antelope shareholders to obtain effective control of the corporation (51%).

Shortly thereafter, Alan Taylor resigned from Antelope and a new CEO, Thomas Lykos (Genssler's attorney) was installed to lead the company. During the next few months the company was effectively raided of assets and placed in a precarious financial position, paving the way for Genssler's bankruptcy plan. Several Antelope officers and board members were complicit in this activity. Among them Anna Cole, Ivan Cardenas, Thomas Scott and Kenneth Geyer. With the help of these individuals and others, who backed them financially, Genssler created a competing company named MCC Computer Company, LLC.

The Antelope officers and directors acted with complete disregard for their fiduciary obligations to the company and its shareholders.  They systematically converted Antelope assets and customers to the new company.  For example, Ivan Cardenas and Victor Cardenas, Jr., were dispatched to Switzerland to shut down the Antelope manufacturing facility and take (without Antelope's permission) the computer hard drives containing Antelope's design and production information.  This theft has resulted in a criminal complaint being filed in Switzerland against Ivan Cardenas, Klaus Genssler and others who participated in this scheme. The stolen technology was transported by Victor Cardenas, Jr. back to the State of Texas and is currently being used by MCC Computer Company, to compete with Antelope.

Another Antelope board member, Anna Cole, was given the task of marketing the Antelope core as an MCC product.  Even before resigning her position with Antelope she began to convert Antelope customers to MCC.  Anna Cole also directed the efforts of MCC to simply "re-label" the Antelope core with an MCC logo and pass it off as MCC's product.  She was likewise instrumental in creating the marketing campaign and website of MCC, while she remained a board member of Antelope.  Her blatant disregard for Antelope is well demonstrated by the fact that the MCC website was initially only a copy of the Antelope site, with a touched-up photo that merely changed the logo on the core to that of MCC.  Through the efforts of Anna Cole, Ivan Cardenas and the other named defendants, MCC has succeeded in obtaining orders from numerous Antelope customers.

The efforts of Anna Cole were directly supported by her father, John Gary Newton, who has and continues to profit from her illegal activities as an owner of MCC.  Likewise, Ivan Cardenas receives financial backing and other support from Rodolfo Fabre and Victor Cardenas, Jr., each of whom have profited individually from this unlawful scheme.

Once the Defendants got their hands on the technology, they soon realized that they could not fully exploit the potential of the Antelope core without production assistance from former Antelope personnel.  The Defendants approached Pierre Stirnweiss, Antelope's former production manager, and obtained his agreement to use Antelope's technology, including data on the stolen hard drives from the Swiss factory, to produce the Antelope core and pass it off as MCC's product.  Mr. Stirnweiss is currently residing at Klaus Genssler's house in Houston, Texas while he is overseeing the piracy of Antelope's technology and the creation of an alternate production facility.

Defendants also recognized another problem with their scheme - - the lack of a license for the underlying technology from IBM.  The original license was granted to Antelope and is non-tranferrable.  The license also contains a reversion provision that cancels the license if Antelope files for bankruptcy.  These facts have left MCC in desperate need of a license to cover their product.  IBM has refused to grant MCC a license, so MCC approached Eltan, B.V. and obtained a license from them for the up-grades performed under contract with Antelope. MCC is now passing this off as a license for the core.

By granting this "license" Eltan, B.V. has violated its agreement with Antelope, which merely allowed them to perform upgrades to the underlying IBM technology.  Eltan does not own and has no right to "license" the IBM works that it was provided merely as a contractor of Antelope.  Eltan has "licensed" Antelope's technology to MCC, a direct competitor, without Antelope's permission and without any right to do so.

## DERIVATIVE ALLEGATIONS

Plaintiff is a shareholder of Antelope Technologies, Inc. and brings this action derivatively on behalf of the nominal defendant Antelope against several directors and officers

of Antelope who have participated in the course of conduct alleged in this complaint, to the detriment of Antelope and in contravention of their fiduciary duties to Antelope and Plaintiff. Plaintiff has on many occasions voiced displeasure and concern to the defendants regarding the actions complained of herein. A formal demand to the board of directors was not made by Plaintiff regarding this suit as the board is controlled by defendants who are acting contrary to Antelope's interest, rendering such a demand futile. Further, the acts of which Plaintiff complains constitute breaches of fiduciary duty by the board members that cannot be ratified by a majority vote of the board. Further, several of the acts of which Plaintiff complains are illegal and incapable of ratification. In addition, the Antelope board is essentially under the control of an outsider (Klaus Genssler) and is not willing or capable of functioning as an independent decision maker for Antelope's shareholders.

## FIRST CAUSE OF ACTION
## LANHAM ACT VIOLATIONS

The factual allegations presented above are incorporated herein by reference. The Lanham Act provides, in relevant portion, "Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125. The defendants acting individually and together in concerted action violated the Lanham Act by misrepresenting the Antelope core as their own product. Particularly, MCC Computer Company, LLC and its agents,

employees and principles, advertised the product as its own at the MCC Computer Company website (**www.modular-pc.com**) with the only notable difference being that the name printed on the picture of the core has been changed from Antelope to MCC's logo. Also, during the Consumer Electronics Show in Las Vegas, Nevada, Defendant Genssler, speaking as President of MCC, issued a press release claiming that the core was MCC's product. This press release was also posted on the MCC company website.

These actions, and others perpetrated by the defendants, caused actual confusion regarding the ownership, affiliation and connection of the product with MCC. These actions are also likely to cause continued confusion among prospective customers of Antelope and to deceive such customers as to the origin, sponsorship and approval of Antelope with regard to the product. As a result, Antelope and its shareholders, including Plaintiff, have been harmed through lost sales, lost business opportunities and lost product recognition in the market place.

Under the Lanham Act, Plaintiff is entitled to seek, and hereby pleads for, injunctive relief to prevent further harm. Plaintiff also is entitled to recover all profits earned by Defendants as a result of their conduct, attorney's fees and costs of this action, and an amount up to three times Plaintiff's actual damages. Plaintiff hereby requests the Court to render such judgment.

**SECOND CAUSE OF ACTION**
**RICO ACT VIOLATIONS**

The factual allegations presented above are incorporated herein by reference. As set forth in greater detail below, in connection with the acts, conduct, combination and conspiracy alleged herein, the defendants and their co-conspirators, directly and indirectly, have used the means and instrumentalities of interstate and foreign commerce, including travel in interstate

and foreign commerce and have used the United States mail and interstate and international wire facilities in furtherance of their unlawful scheme.

At all relevant times, the Defendants have pursued a common course of conduct, acted in concert and conspired with, and aided and abetted one another to accomplish the wrongs complained of herein. Each defendant was the agent of each of the remaining defendants and was acting within the course and scope of said agency at the relevant times. Each of the defendants is liable as a direct participant in, a co-conspirator and an aider and abettor of, the wrongs alleged in the Complaint.

Beginning in July of 2004 and continuing to the present, the Defendants formed a corrupt enterprise and have engaged in a pattern of racketeering activity, whose objective was the theft and marketing of the Antelope core as the Defendants' product. Defendants through their individual agreements formed an association in fact with the sole objective of seizing control of Antelope Technologies, Inc. and taking from it the valuable modular computer cores and their underlying technology. This has been accomplished through an ongoing scheme of fraud and deception regarding Defendants' intentions toward Antelope and its shareholders. Defendants also have created and funded MCC Computer Company, LLC for the sole purpose of receiving stolen Antelope technology and proprietary business information, with the specific intent of copying Antelope's modular computer design and passing it off as MCC's own.

In furtherance of this unlawful conspiracy, Defendants have engaged in a series of illegal acts including the theft of corporate assets from Antelope's Swiss production facility, which stolen property was transported into the United States by Victor Cardenas at the behest of Ivan Cardenas and other named defendants, in violation of 18 U.S.C. §2314. This theft is the subject of a criminal complaint filed in Switzerland against several named defendants in

this action.  Once transported to the United States, these stolen goods were received and used by other named defendants, including Klaus Genssler and Pierre Stirnweiss in furtherance of their plan to unlawfully produce copies of the Antelope core for MCC, in violation of 18 U.S.C. §2315.  Further, the defendants have converted actual Antelope cores and re-labeled them to fraudulently conceal their true identity as Antelope products.  Defendants then transported these cores in interstate and/or international commerce in violation of 18 U.S.C. §2314.  This pattern of racketeering activity is ongoing as Defendants continue to unlawfully exploit the business assets of Antelope and convert them to their own use, to produce copies of the Antelope core, and to market them through interstate and international commerce.

The above predicate acts all occurred after the effective date of RICO (October 15, 1970) and within 10 years of each other.  Each of the defendants' racketeering activities were undertaken for the purpose of furthering their common scheme to unlawfully seize Antelope's proprietary business technology and convert it for their own profit.  The acts described above are part of a recurring pattern of racketeering as defined in 18 U.S.C. §1961(5) and are ongoing at this time.

As a direct and proximate result of defendants' acts and conduct in violation of RICO §1962(a) and (d), Plaintiff has been injured in her business and property.  Under RICO §1964(c), Plaintiff seeks to recover treble damages and the costs of bringing this suit, including attorney fees.

## THIRD CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

The factual allegations presented above are incorporated herein by reference. Defendants Anna Cole, Ivan Cardenas, Thomas Lykos, Kenneth Geyer, and Thomas Scott were at the relevant times officers and/or directors of Antelope Technologies, Inc.  As such,

each of these individuals owed a fiduciary duty to Antelope and its shareholders, including the Plaintiff. Each of these individuals acted without regard to their fiduciary duties to Antelope and its shareholders. They directly transferred assets of the company to a competitor and assisted others in doing so. They created and/or assisted in the creation of MCC Computer Company, LLC, a direct competitor of Antelope. They solicited and assisted others in soliciting the customers of Antelope on behalf of its rival MCC. They converted corporate opportunities which were the property of Antelope and its shareholders to their own benefit and to the benefit of a rival company. As a direct and proximate result of these alleged breaches of fiduciary duty, Antelope and its shareholders, including Plaintiff, have suffered damages including the loss of business assets, loss of business opportunities and loss of revenue and profits.

## FOURTH CAUSE OF ACTION
## CIVIL CONSPIRACY

The factual allegations presented above are incorporated herein by reference. Defendants conspired among themselves to achieve the unlawful objectives detailed above. Particularly, the named Antelope officers and directors met and conspired among themselves and with other named defendants to breach their fiduciary duties to Antelope and its shareholders and to divert Antelope's customers, business opportunities and business assets to MCC and other named defendants. Defendant Genssler met and conspired with each of the individual defendants to achieve his ultimate goal of seizing Antelope's technology and the Antelope core for himself, to market as his own product. This conspiracy included among other things the above-described interference with Antelope customers, the alteration of Antelope's products and marketing material, the theft of Antelope's computer hard drives and the re-labeling of the Antelope core as an MCC product. To achieve his objectives, Genssler

also conspired with the Antelope officers and directors to entice them to breach their fiduciary duties toward Antelope and its shareholders. Further, each of the named defendants joined in the ultimate conspiracy to take the modular computer technology from Antelope and to produce and market it as the product of MCC, in complete disregard for the rights of Antelope and its shareholders.

In furtherance of the above unlawful agreements, the defendants committed numerous unlawful acts, including the theft of Antelope's property, business information and customer contacts. The defendants also unlawfully altered Antelope's products by removing the Antelope logo and placing an MCC logo on the product and marketing it as their own. Defendants also committed other unlawful acts as detailed above, in furtherance of this conspiracy. As a direct and proximate result of this conspiracy and the unlawful acts of the Defendants, Antelope and its shareholders, including Plaintiff, have suffered damage.

## FIFTH CAUSE OF ACTION
### CONVERSION

The factual allegations presented above are incorporated herein by reference. Defendants have converted the business assets of Antelope to their own individual use and the use of a competing company, MCC Computer Company, LLC, a company that is owned by several of the defendants. The conversion of assets includes the theft of Antelope's business information from the computer hard drives stolen by Ivan Cardenas and Victor Cardenas, Jr. from the Swiss production facility. The Defendants also have converted confidential business information, including client lists and client contact information in a similar manner. This business information was the property of Antelope and its shareholders. Likewise, the Defendants have converted Antelope's proprietary business information and "know-how" with regard to designing, producing and marketing the Antelope core. The MCC modular computer

is merely a copy of the Antelope core with a different logo painted on its cover. The various application shells offered by MCC are also simply copies of Antelope designs. Defendants also physically converted several existing Antelope cores by simply putting stickers over the Antelope name and re-labeling them as MCC's product and passing them off to customers as such. As a direct result of these acts, Antelope and its shareholders, including Plaintiff, have been damaged.

## SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT

The factual allegations presented above are incorporated herein by reference. Defendants Genssler and Scaltech International breached material terms of the Mutual Nondisclosure & Non-Compete Agreement executed on July 4, 2004. Particularly, the contract provides, "During the term of and for a period of three years after the termination of this Agreement, Participant, for itself and for its affiliates, associates, successors and assigns, agrees not to directly or indirectly finance, acquire, own, lease, manage, operate or control, or participate in the financing, acquisition, ownership, lease, management, operation or control of, or otherwise be an investor in or a consultant or adviser to, any business, firm, corporation or entity that is a direct competitor of Antelope Technologies, Inc. in modular computing." (paragraph 8). Klaus Genssler, who executed this agreement on behalf of Scaltech currently is serving as the President of MCC Computer Company, LLC, and is attempting to market as its own product the Antelope modular computer. This breach has caused Antelope and its shareholders, including Plaintiff, harm through lost sales, misuse of proprietary business information and unfair competition.

## SEVENTH CAUSE OF ACTION
## INJUNCTIVE RELIEF

In addition to all other legal and equitable relief to which she is entitled, individually and derivatively as a shareholder of Antelope, Plaintiff requests the Court to enter a preliminary and permanent injunction against all named Defendants restraining them from:

1.      Marketing Antelope's modular computer as a product of MCC or any other unauthorized person or entity;

2.      Using Antelope's technology and proprietary business information to produce modular computers for any person or entity other than Antelope;

3.      Misrepresenting to Antelope's customers that MCC is licensed to use the underlying technology which is the property of Antelope;

4.      Mislabeling Antelope's products;

5.      Shipping any such mislabeled Antelope products in interstate commerce;

6.      Engaging in any other act which is likely to lead to confusion or mistake regarding the affiliation, connection or association of any person or entity with Antelope or any of its products; and

7.      All further illegal or fraudulent activities subject to this Court's inherent injunctive power or as permitted by the Lanham Act, RICO Act or other federal statute.

## PRAYER FOR RELIEF

As a direct and proximate result of each of the foregoing acts, Plaintiff has suffered damage. She hereby seeks all legal and equitable relief to which she is entitled individually or as a shareholder of Antelope Technologies, Inc., including the following:

1.      All actual damages resulting from Defendants' actions;

2.      Treble damages under the Lanham Act and/or RICO Act;

3.      Punitive damages;

4.      Injunctive and/or declaratory relief as deemed appropriate by the court;

5.      Judgment for costs of the suit incurred, including attorneys' fees;

6.   Interest on all such amounts permitted by law; and

7.   Such further legal and equitable relief as this court may deem proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

Respectfully Submitted,

**CLAYTON E. DARK, JR.**
State Bar No. 05384500
LAW OFFICES OF CLAYTON E. DARK, JR.
207 E. Frank, Suite 100
P.O. Box 2207
Lufkin, Texas 75902-2207
Tel: (936)637-1733
Fax: (936)637-2897
**GREGORY F. COX**
State Bar No. 00793561
PROVOST    UMPHREY LAW FIRM, L.L.P.
490 Park Street
Beaumont, Texas 77704
Tel: (409) 835-6000
Fax: (409) 813-8624

By: _____

ATTORNEYS FOR PLAINTIFFS