**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| JANIS LOWE, RAINEE BUSBY, ET AL | § | |
| | § | |
| *Plaintiffs* | § | |
| v. | § | Civil Action No. 9: 05-cv-38 |
| | § | JURY |
| ELTAN, B.V., KLAUS GENSSLER, | § | |
| MCC COMPUTER COMPANY, LLC, ET AL | § | |
| *Defendants* | § | |
| -and- | § | |
| | § | |
| ANTELOPE TECHNOLOGIES, INC., a | § | |
| Colorado Corporation | § | |
| *Nominal Defendant* | § | |

## PLAINTIFFS' MOTION FOR SUMARRY JUDGMENT

NOW COME Plaintiffs, TERRY HENDERSON, DEBBIE HENDERSON, ALAN H. TAYLOR, BECKY TAYLOR, STEPHEN C. GUYER and GUY R. FISHER (collectively as the "Plaintiffs"), by and through their attorney of record, George O. Mejlænder, ("Mejlænder"), who, pursuant to Federal Rules of Civil Procedure 12 and 56, move for Summary Judgment based upon the Pleadings and Exhibits attached hereto (the "Motion") against Anna Cole ("Cole") and John Gary Newton ("Newton")(Cole and Newton sometimes referred to collectively in this Motion as the "Defendants"), and in support of the Motion, Plaintiffs will show that:

## I.  BACKGROUND and PROCEDURAL INFO

1.     On April 17, 2013, Plaintiffs' Six Amended "Complaint" (Doc. No. 216) was filed under the captioned case after this Court Granted Plaintiffs' Motion for Leave to Amend (See Order under Doc. No. 214).   Simultaneous with this Motion, Plaintiffs are filing verifications of certain facts pled in the Complaint, copies of which are attached

hereto and incorporated herein for all purposes as Exhibit "A-1".  Plaintiffs request that the Court take judicial notice of Plaintiffs' verified Six Amended Complaint.

2.     On or about March 6, 2013, a true and correct copy of the Complaint was served on Newton at his last known address via First Class U.S. Mail, Postage Prepaid, as stated in the Certificate of Service filed with the Motion (Doc. No. 214), and the Affidavit attached hereto as Exhibit "A".   On or about July 18, 2013, true and correct copies of the Complaint and other documents were served on Cole via First Class U.S. Mail, Postage Prepaid, as stated in the Certificate of Service filed under Doc. No. 244, and the Affidavit attached hereto as Exhibit "A".   Since Defendants have failed to answer, all averments in the Complaint are admitted.

## II. UNCONTESTED FACTS

3.     As stated in averments 23 and 24, the uncontested Complaint establishes this Court's proper jurisdiction over the parties and the subject matter of this case, and the fact that venue is proper in this district.

4.     Averment 34 (verified by Henderson and Guyer on pages 2 and 6 of Exhibit A-1, respectively) establishes that: "*Antelope was effectively raided of assets and placed in a precarious financial position*". . ., and "*included among the officers, . . . shareholders and board members complicit in that activity*", including *Anna Cole*. Averment 34 goes on to explain how Anna Cole, and others, helped to form MCC Computer Company, LLC ("MCC") to directly compete with Antelope Technologies, Inc. ("Antelope").

5.     Averment 35 (verified by Henderson, Taylor and Guyer on pages 2, 4 and 6 of Exhibit A-1, respectively) establishes that: "*While either employed by Antelope or in their capacity as Antelope insiders, officers and directors, . . .Cole (an Antelope/MCC*

*Conspirator) acted with complete disregard for their* (her) *fiduciary obligations to Antelope and it shareholders."* (clarification added)

6.      Averment 36 (verified by Guyer on page 6 of Exhibit A-1) further establishes that: "*former board member and employee, Anna Cole, was employed by MCC and marketed the Antelope core technology to Antelope's former clients as an MCC product.*"   Averment 36 goes on to establish that: "*Even before resigning from Antelope, she* (Anna Cole) *began to convert Antelope customers to MCC.  Anna Cole . . . directed the efforts of MCC to simply re-label the Antelope core technology with an MCC logo and pass/market the re-labeled Antelope core technology to Antelope's clients as MCC technology.*" (clarification added) Averment 36 further explains how Anna Cole was*:  "instrumental in creating the marketing campaign and website of MCC, while she remained a board member of Antelope. Her blatant disregard for Antelope is well demonstrated by the fact that the MCC website was initially only a copy of the Antelope site, with a touched-up photo that merely changed the logo on the core to that of MCC.*"

7.      Averment 37 (verified by Fischer on page 8 of Exhibit A-1) establishes that: "*With the financial support of the MCC Computer Company LLC Financers, Cole, Newton, Ivan and Victor Cardenas, Rolf Genssler and the employment of the Antelope/MCC Conspirators with their unique knowledge of the manufacturing requirement to build the computer, Klaus Genssler executed his premeditated plan to systematically deprive Antelope of the financial and human capital that it required to locate the financial and managerial resources needed to ensure the viability of Antelope.*"   Averment 37 goes on to make it clear that: "*The efforts of Anna Cole were*

*directly supported by her father, John Gary Newton, who has and continues to profit from her illegal activities as an owner of MCC.*"

8.      Averment 38 (verified by Fischer on page 8 of Exhibit A-1) goes on to explain that:    "*The Defendants approached Pierre Stirnweiss, Antelope's former production manager, and obtained his agreement to use Antelope's technology, including data on the stolen hard drives from the Swiss factory, to produce the Antelope core and pass it off as MCC's product.*"   Anna Cole and John Gary Newton are among the Defendants identified in averment 38.

9.      Averment 39 (verified by Taylor and Guyer on pages 4 and 6 of Exhibit A-1, respectively) establishes more illegal activities by Defendants when: "*MCC approached Eltan, B.V. and obtained a license from them for the up-grades performed under contract with Antelope.  MCC is now passing this off as a license for the core.*"  Averment 40 (verified by Taylor and Guyer on pages 4 and 6 of Exhibit A-1, respectively) makes it clear that: "*By granting this 'license' Eltan, B.V. has violated its agreement with Antelope, which merely allowed them (*Eltan*) to perform upgrades to the underlying IBM technology.  Eltan does not own and has no right to 'license' the IBM technology that it was provided merely as a contractor of Antelope.  Eltan has 'licensed' Antelope's technology to MCC, a direct competitor, without Antelope's permission and without any right to do so.*"  (clarification added)

### III. PLAINTIFFS' ESTABLISHED CLAIMS

10.      **Derivative Action**:  Averment 41 confirms that:  "*Plaintiffs are shareholders of Antelope . . . and bring this action derivatively on behalf of the nominal defendant Antelope against several directors and officers of Antelope who have participated in the*

*course of conduct alleged in this complaint, to the detriment of Antelope and in contravention of their fiduciary duties to Antelope and Plaintiffs.  Plaintiffs have on many occasions voiced displeasure and concern to the Defendants regarding the actions complained of herein. A formal demand to the board of directors was not made by Plaintiffs regarding this suit as the board is controlled by Defendants who are acting contrary to Antelope's interest, rendering such a demand futile. Further, the acts of which Plaintiffs complain constitute breaches of fiduciary duty by the board members that cannot be ratified by a majority vote of the board.  Further, several of the acts of which Plaintiffs complain are illegal and incapable of ratification. In addition, the Antelope board lacks the necessary independence to act as its majority shareholders took steps to ensure that Klaus and Rolf Genssler and their affiliates conspired with Cardenas, Cole, Newton, Fabre and their affiliates to take control of Antelope, its assets, key employees and starve it from the funds it needed so that the board was not willing or capable of functioning as an independent decision maker for Antelope's shareholders."*

      **11.**    **Defendants' Lanham Act Violations.**    Averment 42 establishes that Defendants, Anna Cole and John Gary Newton (working with others), were responsible for the Lanham Act violations.

      a.    Averment 43 explains how:  "*The Lanham Act provides, in relevant portion* (that)*, 'Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device ...or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to*

*cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*' *15 U.S.C. § 1125.*" (clarification added)

      b.    Averment 43 goes on to establish that:  "*The Defendants acting individually and together in concerted action violate the Lanham Act by misrepresenting the Antelope core technology as their own product.  Particularly, MCC. . . and its agents, employees and principles, advertised the product as its own at the MCC Computer Company website* **(www.modular-pc.com)** *with the only notable difference being that the name printed on the picture of the core has been changed from Antelope to MCC's logo.*"

      c.    Averment 44 shows how:  "*These actions and others perpetrated by the Defendants caused actual confusion regarding the ownership, affiliation and connection of . . . Antelope's core technology product with MCC. These actions are also likely to cause continued confusion among prospective customers of Antelope and to deceive such customers as to the origin, sponsorship and approval of Antelope with regard to the Antelope core technology product. As a result, Antelope and its shareholders, including Plaintiffs, have been harmed through lost sales, lost business opportunities and lost product recognition in the market place.*"

      d.    Averment 45 explains how: "*Under the Lanham Act. . . Plaintiffs also are entitled to recover all profits earned by Defendants as a result of their conduct,*

*attorney's fees and costs of this action, and an amount up to three times Plaintiffs' actual damages*."

e.     With that information, Plaintiffs request that the Court render a judgment against Defendants Anna Cole and John Gary Newton, jointly and severally, for their Lanham Act violations in an amount equal to three (3) times Plaintiffs' actual damages as detailed in Lance Morman's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "B"; and for Plaintiffs' attorneys fees and costs of bringing and pursuing this litigation as detailed in George O. Mejlaender's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "A".

**12.     Defendants' RICO Act Violations.**

a.     Averment 47 explains that Defendants:   "*in connection with the acts, conduct, combination and conspiracy alleged herein* (the Complaint)*, the Defendants and their co-conspirators, directly and indirectly, have used the means and instrumentalities of interstate and foreign commerce, including travel in interstate and foreign commerce and have used the United States mail and interstate and international wire facilities in furtherance of their unlawful scheme.*"  (clarification added)

b.     Averment 48 goes on to establish how:  "*At all relevant times, the Defendants have pursued a common course of conduct, acted in concert and conspired with, and aided and abetted one another to accomplish the wrongs complained of herein.  Each Defendant was the agent of each of the remaining Defendants, and was acting within the course and scope of said agency at the relevant times. Each of the Defendants is liable as a direct participant in, a co-conspirator and an aider and abettor of, the wrongs alleged in this Complaint.*"

      c.     Averment 49 further establishes that:  "*Beginning in July of 2004 and continuing to the present, the Defendants formed a corrupt enterprise and have engaged in a pattern of racketeering activity, whose objective was the theft and marketing of the Antelope core as the Defendants' product. Defendants through their individual agreements formed an association in fact with the sole objective of seizing control of Antelope Technologies, Inc. and taking from it the valuable modular computer cores and their underlying technology. This has been accomplished through an ongoing scheme of illegal activity as described herein, regarding Antelope and Antelope shareholders and its intellectual property and confidential business information.*"

      d.     Averment 50 goes on to reveal how:  "*Defendants also have created and funded MCC . . .  for the sole purpose of receiving stolen Antelope technology and proprietary business information, with the specific intent of copying Antelope's modular computer design technology and passing it off as MCC's . . . While still holding positions with Antelope, including serving as a member of the board of directors, Defendants . . .  Anna Cole conspired . . . . with others, including . . . John Gary Newton . . . . to form a competing company (MCC) and unlawfully obtain and provide to MCC the confidential business information and intellectual property (technology) of Antelope.  Particularly Rudy Fabre, Anna Cole, John Gary Newton . . . . met on August 30, 2004, and at various other times to discuss this scheme.  The very next day, Rodolfo Fabre resigned from the Board of Directors at Antelope, but within days had rescinded his resignation and participated in the Antelope board meeting held on September 4, 2004.*"

      e.     Averment 51 shows how the Defendants:  "*In furtherance of this unlawful conspiracy, Defendants have engaged in a series of illegal acts including the*

theft of corporate assets from Antelope's Swiss production facility, which stolen property was transported into the United States by Victor Cardenas at the behest of Ivan Cardenas and other named Defendants, in violation of 18 U.S.C. §2314. This theft is the subject of a criminal complaint filed in Switzerland against several named Defendants in this Complaint. Once transported to the United States, these stolen goods were received and used by other named Defendants, including Klaus Genssler and Pierre Stirnweiss, in furtherance of their plan to unlawfully produce copies of the Antelope core technology for MCC, in violation of 18 U.S.C. §2315. Further, the Defendants have converted actual Antelope cores and re-labeled them to fraudulently conceal their true identity as Antelope's products. Defendants then transported these cores in interstate and/or international commerce in violation of 18 U.S.c. §2314. This pattern of racketeering activity is ongoing as Defendants continue to unlawfully exploit the business assets of Antelope and convert them to their own use, to produce copies of the Antelope core, and to market them through interstate and international commerce."

      f.    Averment 52 explains how: "*The above predicate acts all occurred after the effective date of RICO (October 15, 1970) and within 10 years of each other. Each of the Defendants' racketeering activities were undertaken for the purpose of furthering their common scheme to unlawfully seize Antelope's proprietary business technology and convert it for their own profit. The acts described above are part of a recurring pattern of racketeering as defined in 18 U.S.C. §1961(5) and are ongoing at this time.*", and averment 53 states that: "*As a direct and proximate result of Defendants' acts and conduct in violation of RICO §1962(a) and (d), Plaintiffs have been injured in their business and property. Under RICO §1964(c), Plaintiffs seek to recover treble damages and the costs of bringing this suit, including attorneys' fees.*"

g.      In light of the above uncontested evidence, Plaintiffs hereby request the Court render such a judgment against Defendants Anna Cole and John Gary Newton, jointly and severally, for their RICO violations equal to three (3) times the actual damages incurred by Plaintiffs as detailed in Lance Morman's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "B"; and for Plaintiffs' attorneys fees and costs of bringing and pursuing this litigation as detailed in George O. Mejlaender's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "A".

13.      **Defendants' Breach of their Fiduciary Duties as Officers, Directors and/or Insiders of Antelope.**

a.      Averments 54 and 55 establish that Cole, Newton and other Defendants: "*were at the relevant times employees, officers, directors and/or insiders of Antelope . . .*"; and: "*As such, each of these individuals owed a fiduciary duty to Antelope and its shareholders, including the Plaintiffs.   Each of these individuals acted without regard to their fiduciary duties to Antelope and its shareholders.   They directly transferred assets of the company to a competitor and assisted others in doing so. They created and/or assisted in the creation of MCC, a direct competitor of Antelope. They solicited and assisted others in soliciting the customers of Antelope on behalf of its rival MCC.   They converted corporate opportunities which were the property of Antelope and its shareholders to their own benefit and to the benefit of a rival company.   As a direct and proximate result of these alleged breaches of fiduciary duty, Antelope and its shareholders, including Plaintiffs, have suffered damages including the loss of business assets, loss of business opportunities and loss of revenue and profits.*"

b.      Averment 56 goes on to establish that:   "*In addition to the foregoing, Defendants acted without regard to their fiduciary duties to Antelope and its shareholders. Klaus Genssler and Rolf Genssler directed the management of Antelope to file bankruptcy proceedings which the court eventually dismissed, finding that the Chapter 11 proceeding was filed in an **attempt to gain an unfair advantage in this litigation.**  See Antelope Techs., Inc. v. Lowe (In re Antelope Techs., Inc.), Case No. 07-31159-H3-11, Civil Action No. H-I0-0205, 2010 U.S. Dist. LEXIS 73456 (S.D. Tex. July 21, 2010). As a direct and proximate result of the bankruptcy filing, Antelope and its employees and shareholders, including Plaintiffs, have suffered damages.*"

c.      Plaintiffs therefore move this Court for a judgment against Cole and Newton, jointly and severally, for Plaintiffs' damages associated with Defendants' breaches of their fiduciary duties as detailed in Lance Morman's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "B"; and for Plaintiffs' attorneys fees and costs of bringing and pursuing this litigation as detailed in George O. Mejlaender's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "A".

**14.     Defendants' Civil Conspiracy.**

a.      Averment 58 goes on to establish that:  "*All Defendants conspired among themselves to achieve the unlawful objectives detailed above. Particularly, the named Antelope/MCC Conspirators met and conspired among themselves and with other named Defendants to breach their fiduciary duties to Antelope and its shareholders and to divert Antelope's customers, business opportunities and business assets to MCC and other named Defendants. Defendant, Klaus Genssler, met and*

conspired with each of the individual Defendants to achieve his ultimate goal of seizing Antelope's technology and the Antelope core for himself, to market as MCC's own product. This conspiracy included among other things the above-described interference with Antelope customers, the alteration of Antelope's products and marketing material, the theft of Antelope's computer hard drives and the re-labeling of the Antelope core as an MCC product.  To achieve his objectives, Klaus Genssler, with the knowledge and approval of Rolf Genssler who, along with the Genssler affiliates, provided funding that allowed them to conspire with the Antelope/MCC Conspirators, and enabled the Gensslers to entice the Antelope/MCC Conspirators to breach their fiduciary duties toward Antelope and its shareholders. Further, each of the named Defendants joined in the ultimate conspiracy to take the modular core computer technology from Antelope and to produce and market it as the product of MCC, in complete disregard for the rights of Antelope and its shareholders."

b.      Averment 59 goes on to establish that:  "In furtherance of the above unlawful agreements, the Defendants committed numerous unlawful acts, including the theft of Antelope's property, business information and customer contacts. The Defendants also unlawfully altered Antelope's products by removing the Antelope logo and placing an MCC logo on the product and marketing it as their own.  Defendants also committed other unlawful acts as detailed above, in furtherance of this conspiracy. As a direct and proximate result of this conspiracy and the unlawful acts of the Defendants, Antelope and its shareholders, including Plaintiffs, have suffered damages."

c.      Plaintiffs therefore move this Court for a judgment against Cole and Newton, jointly and severally, for Plaintiffs' damages associated with Defendants' civil

conspiracy as detailed in Lance Morman's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "B"; and for Plaintiffs' attorneys fees and costs of bringing and pursuing this litigation as detailed in George O. Mejlaender's affidavit (and Exhibits thereto) attached hereto and made a part hereof for all purposes as Exhibit "A".

**15.    Defendant(s) Aiding and Abetting Breach of Fiduciary Duties as Officers, Board Members and/or Insiders of Antelope:**

a.    Averment 61 establishes that:  "*the named Antelope/MCC Conspirators met and conspired among themselves and with other named Defendants to breach their fiduciary duties to Antelope and its shareholders and to divert Antelope's customers, business opportunities and business assets to MCC and other named Defendants thereby debilitating Antelope and leaving it with no alternative other than dissolution or bankruptcy. Consequently, each of the Antelope/MCC Conspirators knowingly participated in and substantially assisted each other's breaches of their fiduciary duties.*"  Cole and Newton are among the named Antelope/MCC Conspirators.

b.    Averment 61 further establishes that:  "*In addition, Klaus Genssler and Rolf Genssler . . . participated in and substantially assisted the breaches of fiduciary duties by conspiring with each of the Antelope/MCC Conspirators and the board members and shareholders of MCC to achieve the ultimate goal of seizing Antelope's technology and the Antelope core for MCC, and then market same as MCC's in total abrogation of the IBM licensing agreement.*"

c.    Averment 62 goes on to establish that:  "*Furthermore, through their participation in the above described conspiracy and assistance in furthering its goals, each of the Defendants aided and abetted the officer and/or director Defendants named*

*above in breaching their fiduciary duties to the Plaintiffs by taking the modular computer technology from Antelope and using it to produce and market same as the product of MCC, in complete disregard for the rights of Antelope and its shareholders. As a direct and proximate result of all Defendants' participation in and assistance to the Antelope/MCC Conspirators and MCC board members and shareholders breaches of their fiduciary duties, Antelope and its shareholders, including Plaintiffs, have suffered damages.*"

d.      So Newton aided and abetting Cole and others in breaching their fiduciary duties, so Plaintiffs request the Court enter a judgment (against Newton for aiding and abetting Cole in breaching her fiduciary duties) for Plaintiffs' damages discussed in Lance Morman's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "B"; and for Plaintiffs' attorneys fees and costs of bringing and pursuing this litigation as detailed in George O. Mejlaender's affidavit (and Exhibits thereto) attached hereto and made a part hereof for all purposes as Exhibit "A".

**16.    Alternatively, Defendants' Conversion:**

a.      Alternatively, averment 63 explains how Cole, Newton and other named Defendants converted Antelope's property.   Averment 64 establishes that. "*These Defendants have converted the business assets of Antelope to their own individual use and the use of a competing company, MCC, a company that is owned by several of these individual Defendants or their affiliates. The conversion of assets includes the theft of Antelope's business information from the computer hard drives stolen by Ivan Cardenas and Victor Cardenas, Jr. from the Switzerland production facility*

b.      Averment 64 goes on to establish that:  "*The Defendants also have converted confidential business information, including client lists and client contact information in a similar manner.  This business information was the property of Antelope and its shareholders. Likewise, the Defendants have converted Antelope's proprietary business information and "know-how" with regard to designing, producing and marketing the Antelope core technology. The MCC modular computer is merely a copy of the Antelope core technology with a different logo painted on its cover. The various application shells offered by MCC are also simply copies of Antelope designs. Defendants also physically converted several existing Antelope cores by simply putting stickers over the Antelope name and relabeling them as MCC's products and passing them off to customers as such. As a direct result of these acts, Antelope and its shareholders, including Plaintiffs, have suffered and continue to suffer damages.*"

c.      Cole, Newton and others converted Antelope's property, so Plaintiffs request the Court enter a judgment against Cole and Newton, jointly and severally, for Plaintiffs' damages (resulting from Defendants' conversion of Antelope's property) as detailed in Lance Morman's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "B"; and for Plaintiffs' attorneys fees and costs of bringing and pursuing this litigation as detailed in George O. Mejlaender's affidavit (and its exhibits) attached hereto for all purposes as Exhibit "A".

## IV. ATTORNEY'S FEES

Because of Defendants' actions, it was necessary for Plaintiffs to retain numerous attorneys to represent them to file, defend and perpetuate this litigation, starting with Provost Umprey, L.L.P., who filed the original Petition along with several

amendments thereof, then Michael Sharp and Mynde Eisen who represented Plaintiffs in Antelope's bankruptcy case which was later dismissed by the District Court, and finally George O. Mejlaender, P.C., their current counsel.

As explained in Exhibit "A" attached hereto and made a part hereof for all purposes, Plaintiffs' current counsel believes that (at least for Plaintiffs' Federal claims detailed above), Plaintiffs should be awarded a judgment for their attorneys' fees equal to twenty percent (20%) of Plaintiffs' damages incurred bringing and perpetuating this litigation. However, if this Court disagrees, then Plaintiffs' reasonable and necessary attorneys' fees based upon an hourly basis are detailed on Exhibit "A".  Plaintiffs request a judgment for their attorneys fees incurred in this case as detailed in Exhibit "A" attached hereto and made a part hereof for all purposes.

## V. DAMAGES

Plaintiffs have been damaged by Defendants' actions and therefore request a judgment against Cole and Newton, jointly and severally, as detailed in Lance Morman's affidavit (and its exhibits) attached hereto and made a part hereof for all purposes as Exhibit "B" generally summarized, to wit:

a.    Actual damages of 30.6 million Dollars U.S.;

b.    Three times Plaintiffs' actual damages;

c.    Attorneys' fees equal to twenty percent (20) of Plaintiffs' total damages, actual, treble and punitive; or alternatively, in the reasonable and necessary amount specified in Exhibit "A";

d.    Costs of court; and

e.    Post judgment interest on the full amount at the annual rate of 5.0%.

## VI. PRAYERS

Plaintiffs therefore pray that the Court Grant this Motion for Summary Judgment based upon the pleadings and Exhibits attached hereto by Granting Plaintiffs a Judgment against Anna Cole and John Gary Newton, jointly and severally, for:

- Their Lanham Act  and RICO Act violations;

- Violations of their fiduciary duties, civil conspiracy, and/or aiding and abetting the breaches of fiduciary duties;

- Alternatively, for Defendants' Conversion;

- Actual damages in the amount of 20 to 40 million Dollars U.S., resulting from Defendants' actions;

- Treble damages under the Lanham Act and/or RICO Act;

- Punitive damages;

- Judgment for costs of the suit incurred, including attorneys' fees; and

- Interest on all such amounts permitted by law.

Dated:  October 24, 2014.

Respectfully submitted,
Attorneys for Plaintiff
**George O. Mejlænder, P.C.**

By:_____/'s''/_____

**George O. Mejlænder**, Attorney at Law
State of Texas Bar No. 24004814
Post Office Box 801261
Houston, Texas 77280-1261
Telephone:  (281) 376-9200
Telecopier:  (281) 376-9201
E-Mail:  gom@gmtxlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that true and correct copies of the above and attached were served on opposing counsel and remaining pro se parties as shown below in accordance with the Federal Rules of Civil Procedure on this the 24th day of October, 2014.

*Via the Court's Electronic Service and First Class U.S. Mail Postage Prepaid To:*
Glenn W. Hagen, Attorney for Defendants Thomas P. Scott and Kenneth Geyer
8925 Ridgeline Blvd, Suite 108
Highlands Ranch, Colorado  80129
Phone No. 303-683-1163
Fax No.  303-683-3521
E-Mail:  hagenlaw4biz@msn.com or hagenlaw@msn.com

*Via First Class U.S. Mail Postage Prepaid To:*
John Gary Newton, pro se Defendant
915 Hay Street
Fayetteville, NC 28303

*Via First Class U.S. Mail Postage Prepaid To:*
Anna Cole, pro se Defendant
2801 Maffitt Court
Fayetteville, NC 28303

*Via First Class Airmail Mail Postage Prepaid and/or E-Mail To:*
Klaus Genssler
c/o Dr. Fruhsorger
Rottmannstr. 11
80333 Munchen, Germany
Phone:  214-529-4482
E-Mail:  kgenssler@aol.com; klausg@scaltechint.com; klausg@mccgroup.biz

_____**"/s/"**_____

**George O. Mejlænder**, Attorney for Plaintiffs