

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| **JANIS LOWE,** *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 9:05-CV-38** |
| | § | |
| **ELTAN, B.V.,** *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT

The District Court referred this civil action to the undersigned United States Magistrate Judge, at Beaumont, Texas, for determination of non-dispositive pretrial matters and the entry of findings of fact and recommended disposition on case-dispositive matters pursuant to 28 U.S.C. § 636 and the Local Rules for the United States District Court for the Eastern District of Texas. Pending before the Court for purposes of this report is the Plaintiffs' Motion for Summary Judgment (doc. #283).

## I.      Background

### A.      Procedural History and Pled Claims

As the parties are aware, this proceeding has been particularly complicated and protracted. Rather than discuss the procedural background at length, the Court will merely summarize the relevant history as it is relevant to the motions now pending before the undersigned.  On February 23, 2005, thirty-two plaintiffs filed suit against fifteen named defendants.  Since that date, the plaintiffs amended their pleadings numerous times, many plaintiffs dismissed their claims voluntarily,  and a number of defendants have been dismissed for various reasons, mainly due to settlement.  A review of the pleadings and the updated docketed reveals that approximately 19 plaintiffs remain with live claims and only two defendants remain, both of whom are proceeding *pro se* - Anna Cole and John Gary Newton.  The live pleading currently before the Court is the *Sixth Amended Original Complaint* (doc. #216) ("Sixth Amended Complaint").

According to the facts presented in the live pleading, the plaintiffs are all shareholders of Antelope Technology, Inc., ("Antelope") a technology company whose leading product is the modular computer, otherwise known as the Antelope "core" technology.  Antelope is named as a nominal defendant.  The factual allegations related to the modular computer technology and Antelope's development of this technology are set forth in the Sixth Amended Complaint, and previous orders of the Court.  The Court summarizes the alleged facts made the basis of Plaintiffs' causes of action below.  The Court also focuses on the claims against Cole and Newton, as they are the only defendants at issue in the plaintiffs' motion for summary judgment.

The foundation of the Antelope core technology is based upon a technology licensed from IBM.  Antelope used this foundation technology and upgraded it the working computer now known as the Antelope core.  Upon perfection of this technology, Antelope began taking steps to bring the product to market and set up a production facility in Switzerland under the direction of Ivan

Cardenas, a named defendant in this action.   Pierre Stirnweiss, another named defendant, was also retained as the factory's production manager.  Antelope obtained financing for the Swiss production facility through a Swiss bank

Antelope also began looking for persons willing to invest.  Plaintiffs allege that beginning in June 2004, Alan Taylor (then CEO of Antelope) and other Antelope board members began discussions with Klaus Genssler, a potential investor.  They allegedly provided him with access to highly confidential business information regarding the Antelope core, its market potential, and the Swiss production facility.  To protect this information, Genssler was required to sign a "Mutual Nondisclosure & Non-Compete Agreement," which he executed as President of Scaltech International, Inc., on July 4, 2004.

The Plaintiffs then allege that Klaus Genssler immediately recognized the huge potential of core product and, rather than simply investing in the company, began steps, in combination with other named defendants, to seize the technology for himself.  Genssler agreed to a $250,000 loan to Antelope, to meet short-term obligations, but insisted that Antelope transfer, to his office, 75 of the completed cores to serve as collateral for the loan.  This transfer occurred around July 23, 2004. According to the Sixth Amended Complaint, Klaus Genssler also took steps to gain control of Antelope for himself.  At a meeting on August 4, 2004, he discussed with Alan Taylor and others a plan whereby the company could file bankruptcy and shed itself of many small investors.  The idea was to increase the ownership percentage for himself and others who would participate in the scheme.  Alan Taylor rejected this idea and later reported it to the Antelope board of directors, along with a recommendation that Antelope stop dealing with Genssler due to his unethical conduct.  As an alternative source of capital, Taylor and a select committee of board members began discussions with another high-tech firm, Xybernaut.

After a brief negotiation, Xybernaut and the Antelope committee drafted an investment

3

proposal to present to the respective boards of each company for approval. Once Genssler found out about the competing investor, he immediately retained legal counsel and obtained a temporary restraining order in state district court in Texas, preventing the Antelope board from consummating the Xybernaut deal. Genssler never funded the bond required by the Texas court. The Plaintiffs argue that this proves that this was merely a tactic to scuttle the competitor's bid. Genssler also purchased enough stock and proxy votes of Antelope shareholders to ultimately obtain effective control of the corporation (51%).

Shortly thereafter, Alan Taylor resigned from Antelope and a new CEO was installed.. According to the Plaintiffs, during the next few months the company was effectively raided of assets and placed in a precarious financial position, paving the way for Genssler's bankruptcy plan. Plaintiffs allege that Genssler and several officers and board members of Antelope acted with complete disregard for their fiduciary obligations to the company and its shareholders. Genssler created a competing company, MCC Computer Company, LLC ("MCC") and converted assets and customers  to MCC.

Plaintiffs allege that Anna Cole - a former Antelope employee and board member - was employed by MCC and marketed the Antelope core technology to Antelope's former clients as an MCC product. Cole directed the efforts to re-label the Antelope core technology with an MCC logo and pass off/market the re-labeled Antelope core technology to Antelope's clients as MCC's product. Plaintiffs also allege that Cole was instrumental in creating the marketing campaign and website of MCC while she remained a board member of Antelope. . Additionally, the Plaintiffs allege that the efforts of Anna Cole were directly supported by her father, John Gary Newton, who profited from Cole's illegal activities as an owner of MCC. Plaintiffs also contend that Cole and Newton conspired with other defendants to take over Antelope, making the basis of their causes of action.

In the *Sixth Amended Original Complaint*, and as further explained in their motion, the

4

Plaintiffs assert the following causes of action involving Cole and Newton, the remaining defendants:

(1) a claim of false designation of origin and misrepresentation under Section 43(a) of Trademark Act of 1946 ("the Lanham Act"), codified at 15 U.S.C. § 1125, alleging that the defendants misrepresented the Antelope core technology as their own product, including advertising the product as their own via website and press releases, leading to confusion about the source of the core technology;

(2) a claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., generally claiming that the defendants conspired, formed a corrupt enterprise, and engaged in a pattern of racketeering activity , the objective of which was the theft and marketing of the Antelope core, and that certain defendants engaged in the theft of corporate assets from Antelope's Swiss production facility all in violation of RICO, Sections 1962(a) and (d), and 1964(c);

(3) a claim for breach of fiduciary duty against Cole and Newton, as officers and/or directors of Antelope;

(4) a claim for civil conspiracy against the defendant officers and directors, specifically alleging that those defendants conspired among themselves to breach their fiduciary duties to Antelope and its shareholders, the plaintiffs, and conspired in the theft and taking of the modular computer technology,

(5) a claim for aiding and abetting breach of fiduciary, specifically alleging that the defendant Antelope officer and directors met and conspired to breach their fiduciary duties to Antelope and its shareholders; and

(6) a claim for conversion, alleging that the defendants converted business information, assets, and property of Antelope and its shareholders to their own individual use and for the use of

a competing company, MCC Computer Company, LLC.  *See Sixth Amended Original Complaint*, at pp. 12-24.

B.      The Motion for Summary Judgment

Plaintiffs' motion seeks summary judgment on their Lanham Act, RICO, breach of fiduciary duty, civil conspiracy, aiding and abetting, and conversion claims.  *See Motion for Summary Judgment*, at pp. 4-14.  In support, the plaintiffs offer the sworn verifications of plaintiffs Terry Henderson, Alan Taylor, C. Stephen Guyer and Guy Fischer.  *See Plaintiffs' Verifications, Exhibit A-1 to Motion* (doc. #284).  In those verifications, the plaintiffs affirm that certain facts stated in the Sixth Amended Complaint are true and correct to the best of their knowledge.  *Id*.  The summary judgment motion also includes the expert report of Lance Morman, a financial consultant and valuation expert.  *See Morman Affidavit and Report, Exhibit B to Motion for Summary Judgment* (doc. #283-2).  The plaintiffs also attach the affidavit of their counsel, George O. Mejlaender, in support of their request for attorney fees.  *See Mejlaender Affidavit, Exhibit A to Motion* (doc. #283-1).  In sum, the plaintiffs rely on the factual allegations in the live pleading, their verified statements, and Morman's report and evidence contained therein in support of their request for summary judgment.

II.      Discussion

A.      Summary Judgment Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quoting Rule 56(c));

*Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir. 1996) (citations omitted).  An issue is *genuine*

if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)A

fact is *material* when it is relevant or necessary to the ultimate conclusion of the case.  *Anderson*,

477 U.S. at 248.  The movant's burden is only to point out the absence of evidence supporting the

nonmovant's case.  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.); 5th Cir.), *cert.*

*denied*, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed.2d 59 (1992).

　　　Once the moving party has carried its burden of demonstrating the absence of a genuine issue

of material fact, the nonmoving party bears the burden of coming forward with "specific facts

showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).  The Court must consider all of the evidence but refrain from making any

credibility determinations or weighing the evidence.  *See Turner v. Baylor Richardson Med. Ctr.*,

476 F.3d 337, 343 (5th Cir. 2007) (citation omitted).  In considering a motion for summary judgment,

"the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).  However,

the non-movant may not rest on the mere allegations or denials of its pleadings, but must respond

by setting forth specific facts indicating a genuine issue for trial.  *Webb v. Cardiothoracic Surgery*

*Assocs. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

　　　When a moving party makes an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586.  Mere

conclusory allegations are not competent summary judgment evidence, and thus are insufficient to

defeat a motion for summary  judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent

summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5ᵗʰ Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5ᵗʰ Cir. 1998).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak.*, 953 F.2d at 915-16 & n. 7.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

B.    Failure to Respond

The court may not grant summary judgment for the sole reason that the party against whom it is directed fails to file an appropriate opposition.  *John v. Louisiana (Bd. of Trustees)*, 757 F.2d 698, 708 (5ᵗʰ Cir. 1985); *see also Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5ᵗʰ Cir. 2001).  "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5ᵗʰ Cir. 1991)).  Although the defendants' failure to comply with the rules governing summary judgment briefing does not permit the court to enter a "default" summary judgment, pleadings are not verified, and, therefore, defendants Cole and Newton have presented no summary judgment evidence to dispute defendant's version of the facts.  They also failed to answer the plaintiffs' most recent pleading.  Defendants have not offered any sworn, verified evidence contesting plaintiffs' claims. However, because the Court is required to look at the record as a whole before granting summary judgment and because the defendants are *pro se*, for the sake of completeness the Court takes the all of the information provided into account in making its findings

8

herein.

C.      Application to Plaintiffs' Claims:  Lanham Act Claims

Title 15, United States Code, Section 1125(a)(1) states, in pertinent part:

> "(1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device, or
> any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> affiliation, connection, or association of such person with another person, or as to the
> origin, sponsorship, or approval of his or her goods, services, or commercial
> activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's goods, services, or
> commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act."

Section 1125(a) thus creates two distinct bases of liability, false association - 15 U.S.C.

§ 1125(1)(A) - and false advertising - 15 U.S.C. § 1125(1)(B).  *Lexmark Int'l v. Static Control

Components, Inc.*, __U.S.__, 134 S. Ct. 1377, 1384, 188 L. Ed. 2d 392 (2014).  Here, the plaintiffs

appear to assert a false association claim.  *See Sixth Amended Complaint*, at p.12; *Motion for

Summary Judgment*, at pp. 5-6.  Specifically, their cause of action under the Lanham Act can best

be termed as one for false designation of origin.

A plaintiff establishes Lanham Act liability by showing that the defendant "uses in commerce

any  word, term, name, symbol, or device" that is "likely to cause confusion, or to cause mistake"

about the "origin, sponsorship, or approval of his or her goods, services, or commercial activities by

another person."  *Emerald City Mgmt., L.L.C. v. Kahn*, No. 4:14cv358, 2014 WL 3835826, 2014

U.S. Dist. LEXIS 106674, at *4-*5 (E.D. Tex. June 19, 2014) (Bush, J.) (quoting *Paulsson

Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir.2008) (quoting 15 U.S.C.

§ 1125(a)(1)(A)). The analysis proceeds in two steps.  *Id*.  A court first considers whether the

plaintiff has a "protectable right in the mark" and then whether there is a "likelihood of confusion

between the marks." *Paulsson,* at 309.   The elements of  trademark infringement and false designation of origin are identical, and the same evidence will establish both claims.   *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008).

i.     *Ownership and Use of the Mark*

Ownership of a mark is established by use in the market, not by registration.   *Emerald City*, at *5 (citing *Board of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel Co.,* 550 F.3d 465, 475 (5th Cir. 2008); *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin,* 909 F.2d 839, 842 (5th Cir. 1990).   "Neither application for, nor registration of, a mark at the federal level wipes out the prior, non-registered, common law rights of others."   *Id.*   Quoting 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:2 (4th ed.) (footnote omitted). The  nonregistered rights of a senior user continue and are not trumped by a later federal registration of a junior user. *Id.* at *5-*6; *see also Union Nat'l Bank*, at 842-843 (the "senior" user who first uses the mark in the marketplace is entitled to enjoin other "junior" users from using the mark, or one that is deceptively similar to it).   The existence of a trademark is not a necessary prerequisite to a Lanham Act action.   *Zyla v. Wadsworth,* 360 F.3d 243, 251 (1st Cir. 2004), *see also Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S. Ct. 2041, 2045, 156 L. Ed.2d 18 (2003) ("While much of the Lanham Act addressed the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection.")

Here, the plaintiffs' summary judgment evidence establishes that Antelope was the "senior" user of the core technology at issue and began using depictions of that Antelope core in its marketing sometime prior to 2004, considering that Antelope was formed May 15, 2002.   *See Attachment to Motion for Summary Judgment* (doc. #283-2), at p. 212.   The defendants set up MCC and began marketing the Antelope technology as their own sometime after October 27, 2004, under the name

of MCC.  Thus, plaintiffs have established senior ownership in the Antelope core technology and that MCC used a depiction of that core technology in it marketing (see below).

    ii.    *Likelihood of Confusion*

The next issue is whether the defendants' alleged misrepresentation of the Antelope core technology as their own MCC product caused consumer confusion.  *See Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 610 (S.D. Tex. 2014); *Patel*, 940 F. Supp. 2d at 540.  The Fifth Circuit uses the following factors, none of which is dispositive, to determine whether a likelihood of confusion exists: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers."  *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. 2013) (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).

The plaintiffs have not pointed to evidence in the record specifically regarding the *strength* of Antelope's mark.  There is evidence about the market for Antelope's product, but nothing specific to the mark at issue.  This factor accordingly weighs in favor of the defendants.

The evidence related to the second and third factors strongly favors finding a likelihood of confusion.  The evidence shows that defendant Anna Cole used Antelope's exact logo and product depiction and merely switched the name from Antelope to MCC and passed the product off as MCC's own.  *See Attachment to Motion for Summary Judgment, Guyer Affidavit* (doc. #283-2), at pp. 336-337.  She simply re-labeled the Antelope core technology with an MCC logo and marketed the Antelope core technology as an MCC product.  *See id.*  Thus, the designs of the marks and the core technology marketed by MCC were almost identical.

There is no evidence related to the identity of retailers and specific purchasers, other than the plaintiffs' averment that MCC obtained orders from numerous Antelope customers.  This factor only

weighs slightly in favor of the likelihood of confusion.

As for the fifth factor, the evidence shows that Anna Cole re-labeled the Antelope core technology and marketed it as MCC's.  This is bolstered by evidence indicating that the MCC website was initially only a copy of the Antelope website, with a touched-up photo that merely changed the logo on the Antelope core to that of MCC.  *See id.*  The similarities in the advertising media of both Antelope and MCC is therefore almost identical and this factor weighs heavily in favor of a likelihood of confusion.

Taking the evidence as a whole, it appears that defendant Anna Cole's intent in re-labeling Antelope's technology and mark as that of MCC was deliberate and, at the direction of her co-defendants and fellow MCC partners, she specifically intended to derive benefit for MCC from the reputation of Antelope.  *See Patel*, at 540-54 (quoting *Am. Rice*, at 332).  This fact alone may be sufficient to justify that there is confusing similarity.  *Id.*  This factor accordingly weights in favor of the plaintiffs.

There is little evidence presented on the seventh and eighth factor - actual confusion and degree of care of potential purchasers.  The plaintiffs aver that the defendants caused actual confusion regarding the ownership, affiliation and connection of Antelope's core product with MCC and that they were harmed through lost sales, lost business opportunities and lost product recognition in the market place as a result.  *See Motion for Summary Judgment*, at p. 6.  However, there is no evidence in the form of customer statements or orders directly indicating actual confusion.  In other words, the plaintiffs have not pointed to first-hand testimony on the buying end relating to confusion of potential customers or the degree of care exercised by those customers in considering the MCC and Antelope products.  This factor thus weighs against a finding of confusion, but the Court notes that plaintiffs are not required to provide evidence of actual confusion in order to prove likelihood of confusion.  *See Montgomery v. Noga*, 168 F.3d 1282, 1303 (11th Cir. 1999).

In sum, the record does not contain evidence creating a genuine issue of material fact regarding the likelihood of confusion. The plaintiffs have put forth evidence sufficient to establish a finding in their favor on at least five of the eight factors, and the remaining factors are either inapplicable or there is no evidence for consideration. Because no one factor is dispositve, the Court's findings on the eight likelihood of confusion factors establish that there is no genuine dispute that Anna Cole, on behalf of MCC, used Antelope's marks in commerce without the plaintiffs' consent and that such use was likely to cause confusion. The uncontroverted summary judgment establishes that she actively and knowingly caused infringement, as discussed above regarding the intent factor. *See Patel*, 940 F. Supp. 2d 532 (an individual can be held personally liable if he actively and knowingly caused the infringement) (quoting *Taylor Made Golf Co. v. MJT Consulting Grp., LLC*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003)). Summary judgment establishing Cole's liability[1] under the Lanham Act for the plaintiffs' false association/false designation claim is accordingly warranted.

iii.     *Remedies*

In their motion, the plaintiffs seek damages on the Lanham Act claim for "three (3) times Plaintiffs' actual damages as detailed in Lance Morman's affidavit (and its exhibits) attached hereto" and for plaintiffs' attorneys fees and court costs. *See Motion for Summary Judgment*, at p. 7; *see also Morman Report and Attachments* (doc. #283-2), at p. 43. The plaintiffs' motion shows they are requesting actual damages in the amount of $20,000,000 to $40,000,000, plus treble damages for the Lanham Act and RICO violations. *See Motion for Summary Judgment* (doc. #283), at pp. 16-17. In his report, plaintiffs' financial expert Lance Morman conducts a valuation of Antelope

---

[1]Although the plaintiffs lump Cole and defendant John Gary Newton together regarding their culpability on the Lanham Act claim, the evidence presented only relates to Anna Cole's active participation in the marketing of Antelope's technology as MCC's. There is no indication that Taylor was involved in this conduct, much less that he acted intentionally, actively or knowingly. Summary judgment is accordingly only warranted as to Anna Cole.

Technologies in which he estimates the value of Antelope prior to the defendants' alleged actions. *See Morman Affidavit* (doc. #283-2), at p. 6. Utilizing the "Income Approach," Morman values Antelope at $30.6 million, which "represents the floor in terms of the value of Antelope as of the valuation date." *Id.* Upon review of Morman's report, however, it is unclear exactly how this valuation can be linked to damages suffered by the plaintiffs resulting from the defendants' Lanham Act violations.

Upon a finding of a violation of Section 1125(a) of the Lanham Act, Section 1117 entitles a plaintiff, subject to principles of equity, to recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). But because the goal of the statute is to achieve equity between the parties, its application requires a case-by-case evaluation "to determine the nature of the infringing conduct and its adverse effects, if any, on the plaintiff." *Patel,* 940 F. Supp. 2d at 543 (quoting *Seatrax, Inc. v. Sonbeck Int'l, Inc*., 200 F.3d 358, 369 (5th Cir. 2000)). In this light, the statute provides:

> "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according [**24] to the circumstances of the case. Such sum shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party."

15 U.S.C. § 1117(a). Though the district court has discretion in determining an equitable damages award, genuine disputes concerning material facts, such as the actual amount of damages or the willfulness of infringement, may still preclude a summary judgment award of damages. *Patel,* 940 F. Supp. 2d at 543-544 (citing *Leatherwood v. Def. Procurement Mfg. Servs. Inc*., No. 403-CV-313-Y, 2004 U.S. Dist. LEXIS 28274, 2004 WL 691218, at *7 (N.D. Tex. Mar. 16, 2004)).

Given the guidelines for the award of monetary damages under the Lanham Act, the Court

must defer granting summary judgment on the damages issue on this cause of action.  The plaintiffs point to the Morman report in support of their request for between $20,000,000 and $40,000,000 in damages, but they do not specify evidence in his report or the record establishing the amount of defendant's profits, plaintiffs' economic damages resulting from the Lanham Act violations.  The plaintiffs' motion does not discuss or point to evidence on the calculation of  profits or losses suffered by plaintiffs due to diverted sales.  *See, e.g., Patel*, at 544-547.  Accordingly, a genuine issue of material fact issues on the amount of damages due to plaintiffs on the Lanham Act, and the Court would recommend deferring final judgment on this issue.

D.    RICO

Plaintiffs assert that the defendants' acts violated the Racketeering Influence and Corrupt Organization ("RICO") Act, 18 U.S.C. § 1962 *et seq*., causing plaintiffs' injury. Plaintiffs are asserting RICO claims under both Section 1962(a) and Section 1962(d), the latter of which prohibits any person from conspiring to violate any of the other provisions of Section 1962.  *See* 18 U.S.C. § 1962; *Motion for Summary Judgment*, at pp. 7-9.   RICO makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity. . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).  To successfully advance a claim under civil RICO, a plaintiff must demonstrate: (1) that the defendant violated 18 U.S.C. § 1962, the statutory provision that contains RICO's prohibited activities; and (2) that the "RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well."  *Grynberg v. BP, P.L.C.*, 527 F. App'x 278, 282 (5th Cir. 2013) (per curiam) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 130 S. Ct. 983, 989, 175 L. Ed. 2d 943 (2010)). In other words, injuries resulting from predicate acts of "racketeering activity" themselves cannot

form the basis of an investment injury for purposes of Section 1962(a). *Davis-Lynch, Inc. v. Moreno*, 667 F.2d 359, 550 (5th Cir. 2012). Instead, the court must determine whether the injuries asserted were the result of the predicate acts or of the investment of racketeering proceeds into a RICO enterprise. *Id.* Citing *St. Paul Mercury Inc. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir. 2000)).

Also, a plaintiff advancing a claim under civil RICO is not required to establish that the defendant was or will be criminally convicted under RICO. *Id*. Citing *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 488 (1985) (explaining that the use of the term "violation" in18 U.S.C. § 1962 "does not imply a criminal conviction" but instead "refers only to a failure to adhere to legal requirements"). Instead, a plaintiff is only required to establish that the defendants' activities are unlawful under 18 U.S.C. § 1962. *Id.* at 282-283.

In this case, plaintiffs have shown that the defendants created and funded MCC for the sole purpose of receiving stolen Antelope technology and proprietary business information, with the specific intent of copying Antelope's modular computer design technology and passing it off as MCC's. Plaintiffs go on to argue that Anna Cole and John Gary Newton conspired with others to form the competing company of MCC  for the purpose of obtaining the Antelope intellectual property and propriety business information. Newton provided financial support to Cole for the scheme and profited from it. Defendants allegedly met on August 30, 2004, and various other times in furtherance of the scheme. Defendants also engaged in additional illegal conduct, including the theft of Antelope's corporate assets from the Antelope production facility in Switzerland, transporting the stolen property into the United States, and using those stolen funds in furtherance of the plan to unlawfully produce copies of the Antelope core technology for use by MCC. These allegations are verified by the sworn affidavits of plaintiffs Henderson, Taylor and Guyer, and have not been contested by defendants Cole and Newton. Thus, the first element of the RICO claim is

met because the plaintiffs offered verified evidence that defendants stole the Antelope core technology, marketed it as MCC's, and used stolen Antelope funds and property to fund the production of the stolen Antelope technology for passing it off and selling it as MCC's.   The racketeering proceeds - stolen from Antelope - were re-invested into MCC in furtherance of the racketeering scheme.

The next step is determining now plaintiffs were injured by the investment of the Antelope funds and property into MCC.  *See Davis-Lynch*, 667 F.3d at 552.   The Fifth Circuit Court of Appeals has made clear that any injury under section 1962(a) must flow from the use or investment of the racketeering income.  *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 584 (5th Cir. 1992).  Plaintiffs have presented verified evidence that the defendants, through MCC, marketed and sold copies of the Antelope core - disguised as MCC product - to Antelope customers, all in interstate and foreign commerce.  Plaintiffs were accordingly directly injured as Antelope suffered the loss of sales of its own product to its own customers resulting from the defendants' racketeering activities - the theft of Antelope funds and property -  through MCC.  The damage to Antelope was proximately caused and flowed from the defendants' illegal activities under RICO because the injuries resulted from the investment of racketeering proceeds stolen from Antelope which were directly invested into a RICO enterprise, MCC, thus enabling defendants to profit from the proceeds stolen from Antelope.  The plaintiffs have accordingly submitted summary judgment evidence sufficient to sustain the defendants' liability on the RICO Section 1962(a) claim as a matter of law.

As for the RICO conspiracy claim, the plaintiffs are also entitled to summary judgment regarding Anna Cole.  Section 1962(d) makes it unlawful for any person to conspire to  violate any of the provisions of Section 1962(a), (b) or (c).  *See* 18 U.S.C. § 1962(d).  To demonstrate a civil RICO conspiracy, a claimant must show that: (1) two or more persons agreed to commit a

substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010).  A conspirator must at least know of the conspiracy and "adopt the goal of furthering or facilitating the criminal endeavor." *Id*.  Quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997).

As discussed above, the summary judgment record supports the finding that defendants Cole and Newton committed a substantive RICO offense by illegally converting Antelope funds and property for use and profit by MCC.  The question on the conspiracy claim them becomes to what extent those defendants knew of and agreed to overall criminal objections of the MCC RICO scheme.  There is ample verified evidence showing that Cole knowingly and actively participated in the scheme by meeting with the Cardenas defendants and Klaus Genssler for the sole purpose of perpetuating the MCC scheme while she was still an Antelope officer.  The undisputed evidence also shows that she knowingly and intentionally engaged in the marketing of Antelope's technology as that of MCC's in order to draw in sales and profit for the stolen technology.  The summary judgment record supports a finding that Cole knowingly participated and facilitated activities in violation of RICO, and that she was actually aware of the illegal activities perpetuated by her co-conspirators and the MCC scheme.  No genuine issue of material fact exists as to Cole's liability under the RICO conspiracy statute, and the plaintiffs are entitled to summary judgment in this regard.

However, the Court is not inclined to make such a finding regarding Cole's father, Mr. Newton.  Plaintiffs contend that Cole's efforts were directly supported by her father and that he continues to profit from her illegal activities as an owner of MCC.  There is no evidence directly linking Mr. Newton to the MCC scheme or showing that he participated in, much less knowingly or with actual awareness of the ongoing substantive RICO violations.  At most, he provided financial support to his daughter in the process and may have profited in return for that support.  However, this does not show as a matter of law that he knew of and agreed to the overall objective of the RICO

18

scheme.  Newton cannot be held liable under the conspiracy theory "merely by evidence that he associated with other. . .conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul."  *Chaney*, 595 F.3d at 239 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)).

In sum, the Court concludes that the plaintiffs have established that no genuine issue of material fact exists on the elements of their substantive Section 1962(a) RICO claim against both Cole and Newton.  They have also established the same for their RICO civil conspiracy claim against Cole.  Summary judgment is accordingly warranted in this regard on the RICO causes of action.

As for damages, the Court again concludes that the plaintiffs' motion does not request damages with the necessary level of specificity.  18 U.S.C. § 1964 sets forth the civil remedies for RICO violations under 18 U.S.C. § 1962© and provides that any person injured by a violation of that section shall recover "threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" 18 U.S.C. § 1964.  Accordingly, based on the liability findings under RICO, the plaintiffs are certainly entitled to actual damages trebled and attorneys' fees.  The Court simply cannot conclude, however, the exact amount of those sustained damages as a matter of law at this time based on the record presented.   Plaintiffs again point generally to their financial expert's report, but offer no hard and fast numbers directly showing the amount of financial losses specifically resulting from the racketeering conduct of the defendants.  *See Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1034 (N.D. Cal. 2004) (plaintiff must demonstrate a "concrete financial loss" to recover under RICO).  The Court therefore finds that fact issues remain on the amount of damages due to the plaintiffs on the RICO claims.

E.      Breach of Fiduciary Duty

Plaintiffs contend that Cole, Newton and the other defendants were at all times employees, officers, directors and/or insiders of Antelope and such they owed a fiduciary duty to Antelope and

its shareholders, including the plaintiffs.  The elements of a claim for breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).

Under Texas law, corporate officers owe a fiduciary duty to the corporations they serve. *See Int'l Bankers Life Ins. v. Holloway*, 368 S.W. 2d 567, 576 (Tex. 1963).  However, corporate officers do not owe a fiduciary duty to an individual shareholder unless there is some contract or special relationship between them in addition to the corporate relationship. *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W. 3d 687, 698 (Tex. App.— Fort Worth 2006, pet. denied).  Relatedly, a shareholder in a closely held corporation generally does not owe a fiduciary duty to another shareholder. *See Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 393 (Tex. App. — Houston [1st Dist.] 2012, judm't set aside by agr.).  During their employment, employees do owe a fiduciary duty to their employers and are obligated to act in their employers' interests. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 2012 (Tex. 2002).  Due to its extraordinary nature, the law does not recognize a fiduciary relationship lightly and whether such a duty exists depends on the circumstances. *Cotten ,* at 698.

In this case, the plaintiffs have not shown how a formal fiduciary duty exists between plaintiffs and defendants which has been recognized under Texas law.  There is no fiduciary duty owed by corporate officers to shareholders.  Even if the defendants can be considered employees of Antelope, the plaintiffs have not explained how that duty would extend beyond the corporation itself - a separate legal entity - to the shareholders.  Plaintiffs have also failed to present evidence of a special relationship between the shareholder plaintiffs and the defendants outside of that as the shareholder/corporate office relationship.  There is no indication from the evidence that Cole or

20

Newton had any relationship of trust or confidence with the plaintiffs which would give rise to an informal fiduciary duty separate and apart from the business relationship. *See Cotten*, at 698; see also *Cardiac Perfusion Servs. v. Hughes*, 436 S.W.3d 790, 791 n.1 (Tex. 2014) (internal citations omitted). At most, the dealings between plaintiffs and defendants were restricted solely to corporate in nature. *See Cotten,* at 698. The Court must therefore conclude that the plaintiffs have not carried their summary judgment burden in establishing that Cole and Newton owed them a fiduciary duty, much less that they breached that duty under Texas law. As there is a genuine issue of material fact on at least one of the elements of this cause of action, the Court must deny summary judgment on the breach of fiduciary duty claim.

F.      Civil Conspiracy

Next, plaintiffs seek an award of summary judgment on their common law civil conspiracy claim. They allege that the defendants conspired among themselves to achieve unlawful objectives of the MCC scheme as more fully described above in regard to the RICO claims. More specifically they contend that the defendants committed numerous unlawful acts in furtherance of their ultimate goal of unlawfully seizing Antelope's technology and marketing and profiting from it as MCC"s own product.

The Texas Supreme Court sets forth the elements for a civil conspiracy claim to include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Chon Tri v. J.T.T*, 162 S.W. 3d 552, 556 (Tex. 2005). Conspiracy is a type of participatory liability used to establish joint and several liability for those who participate in an agreement to commit a tort. *See Carroll v. Timmer Chevrolet, Inc*., 592 S.W. 2d 922, 925 (Tex. 1979). Liability comes from the act to further the conspiracy, not the conspiracy itself. *Id.*

The Court incorporates its analysis of the RICO claims, *supra*, in finding that the plaintiffs

have established that no genuine issue of material fact exists on at least the first four elements of the civil conspiracy cause of action.  It is clear that two or more persons were involved, as the evidence shows that Cole and Newton acted in concert with numerous other co-defendants.  The plaintiffs have presented ample summary evidence showing that the conspiracy's object was to steal the Antelope core technology and unlawfully convert it for the use and profit of MCC.  These actions encompass, at a minimum, the underlying intentional torts of interference with business and interference with contract.  *See Firestone Steel Prods. v. Baraja*, 927 S.W.2d 608, 617 (Tex. 1996); see *also Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W. 2d 546, 551 (Tex. 1998); MICHOL O'CONNOR, O'CONNOR'S TEXAS CAUSES OF ACTION, ch. 37, at 1226-1227 (2015).  The evidence also establishes that defendants met specifically to plan the MCC scheme and their actions in furtherance of the MCC scheme only further support the meeting of the minds.  *See Wackman v. Rubsamen*, 602 F.3d 391, 408-409 (5th Cir. 2010) (applying Texas law on a civil conspiracy claim; noting that a meeting of the minds can be found based on reasonable inferences and circumstantial evidence).

Thus, the plaintiffs have prevailed in establishing through the evidence that no genuine issue of material fact exists on the first four elements of the civil conspiracy claim.  However, the fifth and final element - damages - must yield a different result.   Again, the plaintiffs have not pointed to specific economic evidence showing what damages they suffered as a proximate result of the underlying unlawful actions made the basis of the civil conspiracy.  An overall valuation of the Antelope corporation as described in Morman's report is insufficient to establish that the plaintiffs suffered actual damages.  *See* O'CONNOR'S TEXAS CAUSES OF ACTION, at 1230 (2015).  By merely vaguely referencing the financial expert's analysis and not pointing the Court to concrete damages sustained  directly due to the defendants' actions, the plaintiffs have not carried their summary judgment burden on the fifth and final element of this claim as related to damages.  The summary

judgment movant is required to point to record evidence supporting their claim that no genuine issue of material fact exists, but the plaintiffs have not done so here other than to generally rely on their expert's report. The Court must therefore defer issuing judgment in the plaintiffs favor on this cause of action until more specific evidence regarding damages is adduced.

G.    Aiding and Abetting Breach of Fiduciary Duty

The plaintiffs contend that Cole and Newton, as named Antelope/MCC conspirators, knowingly participated in and substantially assisted each other's breaches of their fiduciary duties. *See Motion for Summary Judgment*, at p. 13. The Texas Supreme Court has long recognized aiding and abetting as a theory for imposing joint liability. *See Kinz-bach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). This includes three distinct types of liability as defined by the Restatement of Torts, one of which includes assisting and participating liability, which the plaintiffs appear to allege here. *See Motion for Summary Judgment*, at p. 13, *see also* O'CONNOR'S TEXAS CAUSES OF ACTION (2015), at 1209-1217; *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969).

To prove assisting-and-participating liability, the plaintiff must establish that the primary actor committed a tort. *See* O'CONNOR'S, *supra*, at 1217; *Pippen*, at 665. Here, the plaintiffs' aiding and abetting cause of action is based on the underlying tort of breach of a fiduciary duty. Having found that the plaintiffs have not established a breach of fiduciary duty claim as a matter of law, the Court must also conclude that there are genuine issues of material fact on the aiding and abetting claim. Because the plaintiffs have not established the necessary predicate tort as a matter of law, it follows that they are likewise not entitled to summary judgment on the aiding and abetting/assisting and participating claim which flows from that underlying tort. The motion should be denied as to this cause of action.

H.      Conversion

Finally, plaintiffs assert a common law conversion claim, arguing that the defendants have converted Antelope's property and business assets to their own individual use and for the use of MCC, a competing company.  *See Motion for Summary Judgment*, at p. 14.  Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 717 (Tex. App. Dallas — 2014, pet. denied) (internal citations omitted). To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Id.*  Citing *Grand Champion Film Prod., L.L.C. v. Cinemark USA, Inc.*, 257 S.W.3d 478, 485 (Tex. App.--Dallas 2008, no pet.). The plaintiff also must establish it was injured by the conversion. *Id.*  (Internal citations omitted).  An action for conversion of money arises only where the money can be identified as a specific chattel, meaning it is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.  *Id.*

It is unclear from the record whether plaintiffs are entitled to judgment as a matter of law on the conversion claim.  The evidence does show that the defendants did unlawfully and without authorization assume and exercise control over Antelope's proprietary business information and physically converted existing Antelope cores by re-labeling them as MCC products.  However, the plaintiffs have not briefed whether the plaintiffs as shareholders actually owned or had possession of the Antelope property subject to the conversion and if they relatedly have standing to bring the conversion claim.  Furthermore, it is unclear from the record if the defendants actually exercised

24

control over the Antelope property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner.  If the defendants were merely copying the Antelope technology and information, then it is assumed that the plaintiffs had access to the property at the same time.   If this is the case, then the plaintiffs cannot establish that element of their conversion claim.  Finally, the issue of damages also remains to be unclear as explained in further detail herein.   For these reasons, the Court finds that a genuine issue of material fact still exists on at least three of the essential elements of the conversion claim.  The Court accordingly recommends that summary judgment be denied on this cause of action.

I.      Attorney Fees

With their motion, the plaintiffs submitted a detailed affidavit from counsel explaining the attorney fees incurred in this matter and the amount of fees to which the plaintiffs claim they are entitled if they prevail on the motion for summary judgment.  The Court wold agree that, at a minimum, the plaintiffs should be entitled to some award of attorney fees on the Lanham Act and RICO claims having found that the motion should be granted on those claims and because fees are allowed by statute for those claims, subject to certain findings.   However, because the fees are an award usually issued in conjunction with the award of damages, the undersigned finds it in the interest of efficiency to defer ruling on the fees issue until the Court also issues a final ruling on the damages to be awarded in this case and corresponding judgment.   The undersigned would therefore recommend that the Court address the attorney fees issue at a later date, in concert with the damages findings.

III.      **Conclusion and Recommendation**

Based upon the findings and legal reasoning stated herein, the undersigned United States Magistrate Judge recommends that the District Court **grant in part and deny** in part the Plaintiffs' Motion for Summary Judgment (doc. #283).  Consistent with the above discussion, the undersigned

specifically recommends as follows:

-the motion for summary judgment should be granted on the Lanham Act claims against defendant Anna Cole;

-the motion for summary judgment should be granted as to defendants Cole and Newton on the substantive RICO claim, but granted only as to defendant Cole on the RICO conspiracy claim,

-the motion for summary judgment should be denied on the plaintiffs' common law claims for breach of fiduciary duty, civil conspiracy, aiding and abetting, and conversion; and

-the motion for summary judgment should be denied as to the damages and attorneys fees issues, to be determined at a later date.

### IV.    Objections

Objections must be:  (1) specific, (2) in writing, and (3) served and filed within fourteen (14) days after being served with a copy of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b), and 72(b).  A party's failure to object bars that party from:  (1) entitlement to de novo review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court, *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED this the 1st day of March, 2015.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE